[No. 5,894.—Department Two.]

## L. H. BASCOMB v. MOSES DAVIS.

PRE-EMPTION UNDER ACT OF CONGRESS OF JULY 23RD, 1866—CONSTRUCTION OF STATUTE—MEXICAN GRANTEE DEFINITION.—The term "Mexican Grantee," as used in the seventh section of the Act of Congress of July 23rd, 1866, to quiet land titles in California, does not mean a person to whom a grant has actually been made by the Mexican government, but the act was passed for the benefit of those who, in good faith and for a valuable consideration, had purchased lands which were *supposed* to have been granted by the Mexican government, and had used, improved, and continued in the actual possession thereof, as provided in the act; and the last clause does not mean that such purchaser must have had the actual possession of *all* the land included in his purchase, but that he may purchase any land within the lines of his original purchase of which he has had the possession required by the act.

ID.—ID.—The general rule is that all statutes are to be construed prospectively, and there is nothing in the act referred to to indicate a different construction.

APPEAL from a judgment for the defendant in the Twentieth District Court, County of Santa Clara. BELDEN, J.

The facts are stated in the opinion. After the decision in Department, the appellant filed his petition that the appeal be reheard in Bank, and the application was denied.

*Moore, Lane, & Leib,* for Appellant.

The claim under which the plaintiff claims springs from a pretended sale and conveyance made to Juan C. Galindo, Sr., in 1846, by a Mission priest, who did not pretend to grant the land as an agent or officer of the Mexican government, so as to pass the title of Mexico. The Act of 1866 applied only to persons who had purchased prior to its passage, and where the lands had already been excluded from valid grants by a final survey, or where the purchase had been made from invalid grants that had already been finally rejected.

*Houghton & Reynolds,* for Respondent.

Cited the opinion of the Secretary of the Interior, of date, September 19th, 1873, in the case of *Bascomb* v. *Davis.*

SHARPSTEIN, J.:

This action is brought to obtain a judgment that the defendant convey to the plaintiff a certain tract of land containing $29\frac{70}{100}$

acres, which is known as lot No. 3 of section 11, T. 7, S. R. 1 W.

On the 15th of December, 1868, the plaintiff filed his declaratory pre-emption statement in the United States Land Office at San Francisco, in which he set forth, that, on the 24th day of May, 1850, he settled upon and improved a quarter-section of land which embraced said lot 3, and declared his intention to claim said quarter-section as a pre-emptive right. He has obtained a patent of all the land so claimed by him except said lot 3, which the defendant has obtained a patent of, after a contest which was finally terminated by a decision of the Secretary of the Interior, that the defendant was- entitled to enter said lot 3, under the provisions of § 7 of the Act of Congress of July 23rd, 1866, entitled " An Act to quiet land titles in California." The particular clause upon which the secretary based his decision reads as follows: " That where persons, in good faith and for a valuable consideration, have purchased lands of Mexican grantees or assigns, which grants have subsequently been rejected,   *   *   *   and have used, improved and continued in the actual possession of the same as according to the lines of their original purchase, and where no valid adverse right or title (except of the United States) exists, such purchasers may purchase the same after having such lands surveyed under existing laws, at the minimum price established by law, upon first making proof of the facts as required in this section."

It is urged, on behalf of the plaintiff, that the decision of the secretary is contrary to law, and therefore not final in a sense which forbids a reviewal of it by the Court.

The first point upon which the counsel of plaintiff seems to rely is, that the defendant was not a purchaser under a grant within the meaning of the act of Congress.

In 1858, the defendant purchased of one Juan C. Galindo, Jr., a tract of about one hundred acres, which embraced said lot 3. The latter acquired it from Juan C. Galindo, Sr., who obtained a cession of it in 1846, from " Friar Jose Ma. del Refugia Suarez del Real, Minister of the Mission of Santa Clara and San Jose, Guardian Administrator of their Churches and Neophytes." The Court below found that Juan C. Galindo, Sr., by petition to the Board of land commissioners, appointed by the United

States under the Act of Congress, March 3rd, 1851, presented his claim for confirmation, and that it was rejected by said Board on the 12th day of June, 1855, and by the United States District Court on an appeal to it on the 30th day of July, 1863, and was finally rejected by the Supreme Court of the United States in December, 1868, and that the defendant has been in the open, notorious, actual, exclusive possession of said lot 3 ever since the year 1858.

And Juan Galindo, Sr., and Juan Galindo, Jr., had been in the open, notorious, actual, exclusive, and continuous possession of said lot 3 since the 10th of June, 1846, on which last-named day said Juan Galindo, Sr., purchased said premises and entered possession thereof, under claim of title derived by and under a deed that day made to him. And the defendant, in the year 1858, purchased, in good faith and for a valuable consideration, the said lot 3 of said Juan Galindo, Jr., who had succeeded to all the rights of said Juan Galindo, Sr., in and to said land.

Was Galindo, Sr., a *Mexican* grantee within the meaning of the clause of the act of Congress above quoted?

There is one expression in the conveyance to him which would seem to indicate that the grantor assumed to act by virtue of some authority conferred upon him by the Mexican government. The clause of the instrument to which we refer reads as follows: "In witness of all which is expressed, I have signed this document in the presence of two witnesses, who saw and read the official order which I was authorized by the government for this payment, which witnesses are Don Diego Forbes and Don Antonio Pena." Here is certainly a reference to an "official order," and a statement that he "was authorized by the government" to do something. As we construe this clause, it means that the grantor was authorized, by an official order of the Mexican government, to convey the land described in the instrument which he executed, in payment of claims which Galindo, Sr., had upon the church, for money and cattle supplied for its worship and for the maintenance of its minister and neophytes.

If we should hold that a "Mexican grantee" means a person to whom a grant has been made by the Mexican government, it

is quite clear that Galindo would not be within that description. But that construction of the act would render it superfluous. A Mexican grantee or his assigns in that sense would not require any such aid. The act, therefore, must have been passed for the benefit of others than those who had purchased lands of grantees of the Mexican government. We think that it was passed for the benefit of those who, in good faith and for a valuable consideration, had purchased lands which were supposed to have been granted by the Mexican government, and had used, improved, and continued in the actual possession thereof, as provided in the act. It seems to us that the good faith of the purchaser, his payment of a valuable consideration, and his occupation and improvement of the land, were the considerations which moved Congress to pass this act. And if so, the case of this defendant is fairly within the spirit of the law. In the absence of any valid adverse right or title or *bona fide* pre-emption claim, there does not seem to be anything inequitable in the United States preferring as a purchaser one who had once paid for the land under the honest but erroneous impression that he was acquiring a valid title, to the one who had never purchased or occupied it. We are, therefore, of the opinion that the defendant was a purchaser from a "Mexican grantee," within the meaning of the act of Congress above referred to.

The next point raised by appellant is that "the defendant never cultivated, improved, or possessed the land 'as according to the lines of his original purchase.'"

It is quite plain that the language of the act makes that a pre-requisite of the right to enter the land as a purchaser of a "Mexican grantee." The Court below found that, although the defendant has been in the open, notorious, actual, exclusive possession of the land in controversy ever since his purchase thereof from Galindo, he never had the actual possession of all the land included in that purchase, according to the exact lines of it, and that a great part thereof was, at the time of said purchase and ever since, in the adverse possession of others who claimed adversely to him and his grantors. The question is, whether the defendant, by reason of his failure to use, improve, and continue in the actual possession of all the land which he purchased of

Galindo, is without the purview of the act.    Are such use, improvement, and possession of the whole tract in the nature of a condition precedent to his right to purchase so much of it as he has used, improved, and had actual possession of?    We think not.    It seems to us that the act will admit of a more reasonable construction than is required to support that theory.    As we contrue it, the clause means, that he may purchase any land within the lines of his original purchase which he has used, improved, and continued in the actual possession of, unless there is some valid adverse right or title to it.    It is urged, however, that the act applies only to cases where the grants had been rejected prior to its passage ; and as defendant's claim was not rejected until after the passage of the act, it does not apply to his case.    But we are unable to discover anything in the act which would warrant us in holding that it was not intended to be prospective.    The general rule is, that all statutes are to be so construed; and the Court below having found that " the land settled upon by the plaintiff on the 24th day of May, 1850, did not include and was not intended to include the north-east quarter of the south-east one-fourth of section 11, mentioned in the complaint, or any part thereof "; and that " the plaintiff did not claim said lot 3, mentioned in the complaint, until the month of December, 1868, when he filed his declaratory statement "; and that the defendant has been in the open, notorious, actual, exclusive possession of said lot 3 ever since 1858—we think that the defendant is entitled to the land for which the patent was issued to him.

There are other points discussed by counsel, but the view which we take of the case renders it unnecessary to consider them in this opinion.

Judgment affirmed,

Myrick, J., and Morrison, C. J., concurred.